UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CARL TODD,<br><br>              Petitioner,<br><br>v.<br><br>PAMELA BONDI et al.,<br><br>              Respondents. | CASE NO. 25-cv-02519-JHC<br><br>ORDER |

# I

## INTRODUCTION

This matter comes before the Court on Petitioner Carl Todd's Petition for Writ of Habeas Corpus. Dkt. # 8. The Court has reviewed the materials filed in support of and in opposition to the petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the Petition. Dkt. # 8.

# II

## BACKGROUND

Petitioner is a 60-year-old, non-U.S. citizen. Dkt. #17-2 at 2. Petitioner was abandoned by his parents and was only informed of his history through his aunt who brought him to the United States. Dkt. # 8 at 7.

ORDER - 1

It is undisputed that Petitioner entered the United States as a child, likely around the age of nine in 1974, from Jamaica. *Id.*; Dkt. #17-2 at 4. In 1992, Petitioner was convicted of drug related crimes and sentenced to 35 years of imprisonment. Dkt. # 15 at 5; Dkt. # 8 at 7. Petitioner's sentence was eventually reduced to 20 years, and he was released from federal prison and immediately taken into ICE custody on September 15, 2008. *Id.*; Dkt. # 15 at 5. At this point, Petitioner's immigration proceedings began and ultimately ended with a final order of removal on May 22, 2009. *Id.* Both Immigration and Customs Enforcement (ICE) and Petitioner sought to procure travel documents for his return to Jamaica; however, Jamaica never issued the documents because there was no record that Petitioner was a Jamaican citizen. Dkt. # 8 at 7-8; Dkt. # 15 at 5. Fifteen months after his initial detention, Petitioner was released in December 2009 under an order of supervision. *Id.*; Dkt. # 8 at 8.

Over the next 15 years, Petitioner remained out of custody and largely compliant with the terms of his supervised release.[1] Dkt. # 17-2. On August 9, 2025, Petitioner was arrested and later re-detained in New York and at some point, presumably, transferred to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, where he remains today. Dkt. # 8 at 4; Dkt. # 15 at 6.

On September 29, 2025, more than a month after Petitioner's re-detention, ICE submitted a travel request to the Jamaican government. *Id.* ICE alleges to have about 11 days later submitted Petitioner's father's visa application and other unidentified documents to the Jamaican embassy that, Respondents claim, prove Petitioner's Jamaican citizenship. Dkt. #15 at 6. These

---

[1] In 2014, U.S. Marshals told ICE that Petitioner was alleged to have violated the terms of his supervised release; however, at that time ICE chose not to re-detain Petitioner. Dkt. # 16 at 3. Respondents also allege that Petitioner was deemed non-compliant in 2018 due to a failure to aid ICE in obtaining a travel document. *Id.*; *but see* Dkt. #17-2 (Petitioner's Department of Homeland Security record noting that between 2010 and 2023 Petitioner made subsequent compliant check-ins but failed to obtain travel documents).

ORDER - 2

documents have not been presented to the Court.  Petitioner contests these assertions regarding citizenship as he believes his father was from Belize, not Jamaica, and eventually was naturalized in the United States.  Dkt. # 18 at 4.

ICE followed up with the Jamaican embassy multiple times but does not appear to have received a response.  Dkt. # 16 ¶ 12-17.  On November 20, 2025, after still not receiving a response from the Jamaican embassy, Respondents informed the Jamaican embassy that Petitioner would be manifested on a charter flight to Jamaica on December 15, 2025.  Dkt. # 15 at 6.  Respondents allege that Jamaica confirmed that Petitioner would be accepted.  *Id*.  This allegation is supported by only a declaration from an ICE officer asserting it without providing any information about how or from whom the confirmation was received.  Dkt. # 16 ¶ 17.  Written proof of the confirmation was not provided to the Court.

Petitioner contests that such a confirmation occurred.  According to Petitioner:  on January 5, 2026, the Federal Public Defender's office on his behalf spoke with an official at the Jamaican consulate who was familiar with his case.  Dtk. # 18-1.   The official informed Petitioner's representative that Jamaica had not issued travel documents or recognized him as a citizen.  *Id*.  The consulate confirmed that they had received the request, which was sent to the capital for further review, but the investigation was still ongoing.  *Id*.  Petitioner provided to the Court the timing of the call, the name of the official, and their phone and extension.  *Id*.

On December 10, 2025, Petitioner filed this matter, arguing that his re-detention without notice and a pre-deprivation hearing violates his constitutional right to due process under the Fifth Amendment and violates regulations governing re-detention.  Petitioner separately requests an order prohibiting Respondents from seeking to remove Petitioner to a third country.  Petitioner also filed a Motion for Order Preventing Transfer During Pendency of Petition, which

ORDER - 3

the Court granted on December 19, 2025, preserving the status quo while his habeas petition is pending. Dkt. #12.

Respondents informed the Court that there was another chartered flight to Jamaica scheduled for January 8, 2026; however, they still did not and have not provided the Court with any travel documents. Dkt. # 15 at 6-7. Respondents have also not made a request to delay briefing to allow time to obtain the necessary travel documents.

### III

### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

A.   **Due Process**

Petitioner invokes the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person "of life liberty, or property, without due process of law[.]" The right to due process "applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and

in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Determining whether a governmental action violates due process:

> [G]enerally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

The traditional test for evaluating due process claims established by *Mathews*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[2] Petitioner contends, among other assertions, that he is entitled to habeas relief because his re-detention violates the Due Process Clause of the Fifth Amendment. *See* Dkt. # 8 at 11-15. Respondents do not engage with Petitioner's re-detention due process claims nor address the *Mathews* factors. *See* Dkt. # 15 at 10. For the reasons below, the Court GRANTS the Petition.

---

[2] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In applying the *Mathews* test, the Court recognized that other circuits have applied the *Mathews* test to due process challenges to immigration proceedings. *Id*. at 1206. The Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings." *Id*. And the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*.; see *Landon v. Plasencia*, 459 U.S. 21 (1982). More recently, Washington district courts have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, *2–3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, *7–8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, *2–4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* test here.

ORDER - 5

B.  *Mathews* Factors

   1.  Private Interest

The first *Mathews* factor considers "the private interest that will be affected by the official action[.]"  *Mathews*, 424 U.S. at 335.  Freedom from detention "is the most elemental" of private interests affected by official action.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").  So it is unsurprising that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]."  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause); *Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (same).

Petitioner has a liberty interest in being free from detention, which he is being denied in that he has been detained for months.  The interest is only strengthened by the Government's actions—detaining Petitioner for 15 months in 2008 and 2009, yet releasing him to live in the United States for more than 15 years, and then re-detaining him on August 9, 2025.  His release allowed him to "gain[ ] a foothold in the United States" and "develop ties in this country," thereby strengthening his interest in being free from detention.  *Pablo Sequen v. Kaiser*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (first quoting *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); and then quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982)) (cleaned up).  In revoking Petitioner's release, the Government has undeniably inflicted a "grievous loss" of Petitioner's liberty, thereby depriving him of a core private interest protected by the Due Process Clause.  *See Morrissey*, 408 U.S. 471 at 482.

Accordingly, the first *Mathews* factor favors Petitioner.

ORDER - 6

### 2. Risk of Erroneous Deprivation of Interest Through Procedures Used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335.

Here, as Petitioner was arrested and immediately re-detained seemingly without any notice or opportunity to be heard more than 15 years after release, the risk of an erroneous deprivation of Petitioner's liberty interest is high. *Valdez v. Joyce*, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest."); *E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases on erroneous deprivation in the context of immigration re-detention).

The Court finds that the probable value of additional procedural safeguards is high. While Respondents do not engage with Petitioner's due processes arguments, they summarily state that release was revoked and then admit that they have not obtained information regarding the procedures used to revoke. Dkt. # 15 at 10. Without any evidence or even suggestion to the contrary from Respondent, the Court assumes no notice, let alone a meaningful opportunity to be heard, occurred. Respondents seem to imply that a foreseeable removal suffices to deny Petitioner of his due process rights and do not even seek to purport that notice or a hearing occurred. Dkt. # 15 at 10.

Regardless of the current status, at the time of detention on August 9, 2025, there was no significant likelihood of removal in the foreseeable future. As far as the record is concerned, there was no change in circumstance from Petitioner's release in 2009 and his re-detention in 2025. No travel documents had been procured. It was not until September 29, 2025, more than a month later, that a Travel Documents Request was even submitted to Jamaica. It is unclear when

ORDER - 7

the Government obtained their alleged proof of Petitioner's father's citizenship to Jamaica, but it does not seem to have been provided to Jamaica until September 29.  If there were a changed circumstance as to the foreseeability of Petitioner's removal, such as proof of citizenship and those documents were in question, the appropriate venue in the first instance would be before the executive branch, through a process already established by the regulations governing re-detention.  *See* 8 C.F.R. § 241.13(i)(3) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release.  The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.  The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision.  The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.").

  Both Petitioner and Respondent say that Petitioner failed to secure travel documents from Jamaica, and it is unclear how his re-detention would assist him in that effort.  His failure to obtain travel documents does not seem to be for a lack of effort, as the Government has also failed to obtain travel documents for the first 15 months of detention in 2008 and 2009, for his 15 years of release, and now again for the past five months of his detention.  If Petitioner had been given adequate notice and a meaningful opportunity to be heard, these discrepancies could have been raised and resolved before Petitioner's liberty interests were erroneously deprived.  The second factor favors Petitioner.

### 3. Government's Interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The Government fails to assert any specific interest that would counsel against the Court finding a due process violation here. *See generally* Dkt. # 15. Still, the Court acknowledges that the Government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

But although the Court acknowledges that the Government has some interests, it also notes that "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Thus, "the government's interest in detaining [a] petitioner without a hearing is 'low.'" *Id.* (quoting *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)); see also *E.A. T.-B.*, 795 F. Supp. 3d at 1323. This is especially true here as the Government already determined that Petitioner was not a danger to the community, leading to his release in 2009, and there was no upcoming removal scheduled for which Petitioner might be a flight risk. This factor also favors Petitioner.

### C. 8 C.F.R. § 241.13

Respondents' sole argument is that there is a significant likelihood of removal in the foreseeable future and thus re-detention is allowable.[3] Dkt. # 15 at 4, 10. Respondents rely on 8

---

[3] Respondents partially argue that Petitioner is not entitled to a pre-detention hearing in a post-order context, citing Petitioner's cases in which re-detention without a hearing occurred without a final removal order. Dkt. # 15 at 10-11. But this argument seems beside the point. If Respondents seek to argue that Petitioner is attempting to re-adjudicate his removal order, it must be noted that all sides agree

ORDER - 9

C.F.R. § 241.13, which states the Government "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *See also* 8 C.F.R. § 241.4. The regulation lays out the revocation procedure: "Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(h)(3).

Here, it remains to be seen that removal is reasonably foreseeable, and it certainly was not foreseeable at the time of re-detention. At that time, the Government had not yet submitted documents to Jamaica to prepare for removal. It was over a month later that the documents were submitted to Jamaica, and thus, at the time of re-detention there was no reasonably foreseeable removal. Travel documents should have been issued before or shortly after re-detention for it to be a change of circumstances. *Rodriguez v. Bondi*, No. C25-2167RSM, 2025 WL 3466925, at *3 (W.D. Wash. Dec. 3, 2025).

While the Court recognizes that Respondents, relying only on a conclusory declaration from an ICE officer, state Jamaica has now confirmed they will receive Petitioner, it also acknowledges that Petitioner contest this fact with as much, if not more, support. Dkt. # 16 at 3-4; Dkt. # 18-1. Due to the government's failure to provide notice and a reasonable opportunity to be heard, Petitioner was not afforded the opportunity to see, let alone contest, the documents

---

that there is a final removal order and that the order is not being challenged. *Id.*; Dkt. #8 at 13-14. To the extent Respondents seek to argue that a petitioner is not entitled to an opportunity to be heard when there is a final removal order in place, the regulations governing re-detention directly contradict this argument and courts have held differently. 8 C.F.R. § 241.13; *see generally Nguyen v. Scott*, 796 F. Supp. 3d 703 (W.D. Wash. 2025); *Rodriguez v. Bondi*, No. C25-2167RSM, 2025 WL 3466925 (W.D. Wash. Dec. 3, 2025); *S-M-J v. Bostock*, No. 6:25-CV-01425-MTK, 2025 WL 3137296 (D. Or. Nov. 10, 2025).

ORDER - 10

on which the government relies to confirm Petitioner's citizenship or raise his concerns that Jamaica has informed him that an investigation as to his status is still ongoing. *See* 8 C.F.R. § 241.13(i)(3) ("The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release."). Because the government did not follow the notice and interview processes as outlined in the regulations, the Court need not reach the issue of the status of the Jamaican travel documents.

Although there is no statutory time limit on detention pursuant to 8 U.S.C. § 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). The Supreme Court has identified six months as a presumptively reasonable time to bring about a noncitizen's removal. *Id.* After six months, a petitioner challenging his detention must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The burden then shifts to the government to come up with "evidence sufficient to rebut that showing." *Id.*

Petitioner was detained for 15 months in 2008 and 2009 and has now been detained for five months. Petitioner's total length of detention need not be consecutive to reach the six-month limit established in *Zadvydas*. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721 (W.D. Wash. 2025) (collecting cases); *Tang v. Bondi*, No. 2:25-CV-01473-RAJ-TLF, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025). His non-consecutive 20 months is no longer presumed reasonable.

\* \* \*

In sum, all three *Mathews* factors favor Petitioner. Petitioner has a protected liberty interest in his continued release from custody, and due process requires Petitioner receive proper notice and an opportunity to respond before he can be re-detained. The Court finds the

Government's re-detention of Petitioner was without notice nor an opportunity to be heard. Such re-detention violates his constitutional right to due process under the Fifth Amendment. Respondent has not provided a showing to rebut the presumption that, after more than six months of detention, removal is not in the reasonably foreseeable future. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the Untied States" and thus is entitled to habeas relief. 28 U.S.C. § 2241(c).

## IV
### CONCLUSION

For these reasons, the Court:

(1) GRANTS the Petition for Writ of Habeas Corpus. Dkt. # 8.

(2) ORDERS that Petitioner must be released from custody immediately on the same conditions of release previously imposed before his arrest on August 9, 2025. Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until he is provided with adequate notice and an opportunity to be heard in compliance with 8 C.F.R. § 241.13 to determine whether re-detention is appropriate.

(3) DIRECTS the clerk to send uncertified copies of this Order to all counsel of record.

Dated this 20th day of January, 2026.

*John H. Chun*
John H. Chun
United States District Judge